THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MELVIN J. PROCTOR, JR., et al.,** | * | |
| Plaintiffs | * | |
| v. | * | Case number: RWT 07cv1957 |
| **METROPOLITAN MONEY STORE CORP.,** *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This action involves claims by individuals who were defrauded by The Metropolitan Money Store ("MMS"), a corporation purporting to offer foreclosure consultation and credit services to financially distressed homeowners in Maryland, Virginia, and the District of Columbia. In reality, the corporation was a criminal enterprise operating a foreclosure rescue scam. In 2007, Plaintiffs Melvin and Nadine McKenzie-Proctor ("Proctors"), Delores and Ronnell Wallace ("Wallaces"), and Dina Simon ("Simon") brought this suit against MMS, Fordham and Fordham Investment Group, Ltd. ("FFIG") (a related corporate entity), several officers and agents of these corporations, and various title companies, settlement agents and straw purchasers who had allegedly participated in the foreclosure rescue scam. Compl., ECF No. 1. Plaintiffs sued on behalf of themselves and those similarly situated. Defaults were entered against MMS, FFIG, MMS officers Joy Jackson ("Jackson") and Jennifer McCall ("McCall"), FFIG President Kurt Fordham ("Fordham"), and MMS closing agent Wilbur Ballesteros ("Ballesteros") after they failed to answer the Complaint. ECF Nos. 50, 67, 127.

In 2008, Jackson, McCall, Fordham, Ballesteros, and four other agents of MMS were indicted in this Court on conspiracy, mail and wire fraud charges. *United States v.*

*Joy Jackson, et al.*, Criminal Action No. RWT-08-cr-0288, ECF No. 1.  Each Defendant plead guilty to one count of the Indictment, and Jackson, McCall, Fordham, and Ballesteros are currently serving substantial terms of imprisonment.  *See, id.*, ECF Nos. 328, 331, 336, 344.  Jackson and McCall were ordered to pay restitution in the amount of $16,880,884.86, Fordham was ordered to pay restitution in the amount of $13,131,287.63, and Ballesteros was ordered to pay restitution in the amount of $16,859,950.  ECF No. 328, 331, 336, 338.  These restitution orders specified that co-defendants were jointly and severally liable for the payment of these amounts.

The Court granted Plaintiffs' motion for preliminary class certification on July 7, 2009, and appointed the Proctors, the Wallaces, and Simon as class representatives.  ECF No. 190.  Plaintiffs have moved for the entry of default judgment against MMS, FFIG, Jackson, Fordham, McCall, and Ballesteros in the amount of $212,085,483.70.  ECF No. 263.  Plaintiffs argue that under the doctrine of non-mutual collateral estoppel, the issue of damages was conclusively decided by the Court's entry of restitution orders in the related criminal case.  Plaintiffs argue that they are entitled to treble damages pursuant to the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1964(c), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(d)(2), and the Maryland Protection of Homeowners in Foreclosure Act, Md. Code, Real Property, § 7-320.  ECF No. 263.  Defendants submitted no opposition brief and did not request a hearing on this issue.

For issue preclusion to apply, four elements must be met: (1) the issue decided in the prior adjudication must be identical to the one presented in the present action; (2) there was a final judgment on the merits in the first action; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the

plea is asserted was given a fair opportunity to be heard on the issue in the first action. *Culver v. Md. Ins. Comm'r*, 175 Md. App. 645, 657 (2007).

First, it is clear that Jackson, Fordham, McCall, and Ballesteros are collaterally estopped from contesting the amount of damages entered against them in their criminal cases. As part of their plea agreements, Jackson and McCall agreed that the total loss to MMS clients attributable to their criminal actions was $16,880,884.86. ECF Nos. 112-1, 166-1, 191-3. Kurt Fordham agreed that his actions as part of the MMS conspiracy resulted in a total loss of $13,554,012.40. ECF No. 195-1.[1] Wilbur Ballesteros agreed that his actions as part of the MMS conspiracy resulted in a total loss of $16,859,950. ECF No. 349-1.

The issue decided by the restitution orders was how much money MMS clients lost as a result of being defrauded by MMS, FFIG, Jackson, Fordham, McCall, Ballesteros and their associates. This is essentially the same issue that must be determined in assessing damages in this case.[2] Jackson, Fordham, McCall and Ballesteros were indisputably parties to the criminal adjudications, and the criminal judgments entered were final judgments on the merits. Defendants had the opportunity to contest the amount of restitution, but in signing plea agreements, agreed to the calculations of the amount of loss caused by their actions contained therein. Therefore, issue preclusion prevents the issue of the amount of loss caused by Jackson, Fordham, McCall and Ballesteros from being re-litigated.

---

[1] Fordham's restitution amount was later lowered to $13,131,287.63. ECF No. 338.

[2] The Court uses the term "essentially" because the judgments entered in the criminal cases were not entered in favor of a class, but rather in favor of named victims and in specified amounts that, out of privacy concerns, are contained in the nonpublic Statement of Reasons entered in connection with each criminal judgment. It could be argued that these specific restitution amounts are incompatible with an award of class-based relief, but this would appear to be a distinction without a material difference. If anything, the amount of the restitution judgments are lower than the amount that arguably would be due to the class as a whole because there is significant risk of under inclusion in the amounts utilized in the criminal judgments.

The judgments in the criminal cases were entered only against the individual defendants, and not the corporate defendants. However, because MMS and FFIG were alter egos of Jackson, Fordham, and McCall, the corporate entities they ran are also estopped from litigating the amount of damages to be awarded in this action.

In a case presenting very similar facts, the District Court for Connecticut held that a corporation was estopped from litigating the amount of damages in a civil action premised upon exactly the same facts that had been adjudicated in the criminal prosecution of the corporation's owner and CEO. *Nat'l Union Fire Ins. Co. v. Employee Staffing of America, Inc.*, 2001 WL 1078807 at *11 (D. Conn. 2001). After noting that the same conduct was at issue in the criminal and civil matters, the Court concluded that the restitution orders in the criminal action constituted a valid, final decision on the merits. *Id.* Because the corporation's owner and CEO had the opportunity to litigate the amount of restitution that should be awarded during the criminal adjudication, the Court held that the corporation he controlled was estopped from re-litigating the issue. *Id.*

The Court finds this reasoning persuasive and holds that a corporate entity that is the alter ego of a criminal defendant against whom a restitution order has been entered is precluded from litigating the amount of damages in a civil action premised on identical conduct, so long as the criminal defendant had a full and fair opportunity to litigate the restitution amount in the criminal proceeding.

Jackson was the president of MMS and a director and resident agent of MMS and FFIG. ECF No. 191-3, at 1. McCall was the chief executive officer and resident agent of MMS. *Id.* The two were the sole executives of MMS. As discussed, *supra*, Jackson and McCall both had the opportunity to litigate the restitution award amount but conceded that the proper restitution to

be awarded was $16,880,884.86. Because MMS was the alter ego of Jackson and McCall, and because Jackson and McCall conceded that the proper amount of restitution was $16,880,884.86 in a prior adjudication, MMS is estopped in this action from contesting the amount of damages.

Similarly, Fordham was the sole executive of FFIG. *Id.* Because FFIG was Fordham's alter ego and Fordham conceded in the criminal proceeding that the proper restitution amount for which he was responsible was $13,554,012.40, FFIG is estopped from contesting a damages award in this case. The Court notes that estoppel on the issue of damages is appropriate only because the conduct at issue in the criminal and civil cases is identical, and the corporate defendants were being operated under the sole direction and control of the criminal defendants.[3]

Plaintiffs argue that treble damages should be awarded in the instant case pursuant to the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1964(c), Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(d)(2), and Maryland Protection of Homeowners in Foreclosure Act, Md. Code, Real Prop. § 7-320(c). 18 U.S.C. § 1964(c) provides, in relevant part: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . ." Plaintiffs allege they were injured as a result of Defendants' violations of § 1962. Defendants failed to contest liability and default judgment was entered against them on the § 1962 claim.

Plaintiffs are clearly entitled to an award of treble damages. They are not, however, entitled to recover amounts already awarded in the criminal judgments against Joy Jackson, Jennifer McCall, Kurt Fordham and Wilbur Ballesteros. As to these Defendants, the Court will

---

[3] Unfortunately, the question of the alter ego liability of MMS and FFIG is largely an academic one. Both entities are defunct and appear to have no assets.

not award damages equaling three times the amount of the restitution judgments, but rather double the restitution judgments, thus resulting in a total award of treble damages against each of the criminal Defendants, but with the first of the three parts of the treble judgment award embodied in the criminal judgments, and the remaining two-thirds in the form of the judgments entered in this case. The corporate entities, MMS and FFIG, did not have restitution judgments entered against them in the criminal cases and, accordingly, full treble damage awards will be entered against them in the amount of $50,642,654.58.[4] As to the individual Defendants, Jackson, McCall, Fordham and Ballesteros, judgments in favor of the class will be entered for $33,761,769.72 against Jackson and McCall, $26,262,575.26 against Fordham, and $33,719,900 against Ballesteros. As with the restitution judgments, the judgments will be joint and several, but with the maximum liability of any Defendant limited to the amount of the judgment entered against him, her or it in this case.

Based on the Court's familiarity with the financial circumstances of the Defendants in the criminal cases, and the apparent lack of any assets in the corporate Defendants, it would appear rather unlikely that any significant recovery will be made at any time in the near future. When and if any recovery is made, the class counsel shall be required to report it to the Court and make distribution in accordance with further orders of the Court. Any additional awards of fees shall, of course, be subject to approval by the Court as well.

---

[4] Plaintiffs request damages in the amount of $212,085,483.70, presumably by *adding* the restitution judgments together, and then multiplying the sum by three. The restitution orders provide that the criminal co-defendants were jointly and severally liable for the amounts specified based upon an analysis of losses of, for the most part, the same individual victims. It would not, therefore, be appropriate to add the restitution judgments and then triple that amount because that would permit multiple recoveries for the same loss.

Finally, the Court will administratively close this case subject, however, to reopening in the event of any future recovery of funds resulting from the judgments entered in this case.

A separate order follows.

<u>September 15, 2011</u>　　　　　　　　　　　<u>　　　　　　/s/　　　　　　　</u>
Date　　　　　　　　　　　　　　　　　　By Alexander Williams, Jr. for
　　　　　　　　　　　　　　　　　　　　Roger W. Titus
　　　　　　　　　　　　　　　　　　　　United States District Judge